# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

JAVIER MANDRY-MERCADO, et al.,

Plaintiffs,

v.                                              CIVIL NO. 16-1314 (GAG)

CONSEJO DE TITULARES
CONDOMINIO EL SEÑORIAL, et al.,

Defendants.

## OPINION AND ORDER

This case concerns a decade-long dispute between condominium residents and a homeowner's association. Plaintiffs fell behind on their condominium fees, their utilities were disconnected, and their claims for relief in state administrative proceedings and state court proved unsuccessful. (Docket No. 45, ¶¶ 1-4, 7, 33, 37.) Although the origins of the dispute involve Puerto Rico property law issues, Plaintiffs' amended complaint (referred to here as the complaint) raises constitutional claims against the homeowners' association and state officials. (Docket No. 45.)

Plaintiffs Javier Mandry-Mercado and Vanessa Lugo Objio bring these constitutional claims against six defendants. Id. The Defendants are Consejo de Titulares Condominio el Señorial, the condominium homeowner's association ("the HOA"); Manual Zengotita, the former HOA President ("Zengotita"); Triple S Property, Inc., the condominium's insurer ("Triple S"); Pedro Gonzalez-Rodriguez, Administrative Law Judge for the Puerto Rico Department of Consumer Affairs ("the ALJ"); Maria Rodriguez-Cintron, Registrar at the Property Title Division ("the Property Registrar"); and former Governor Alejandro Garcia-Padilla ("the Governor") (collectively, "Defendants").[1]

---

[1] The ALJ and the Registrar are sued in their personal and official capacities. The former Governor is sued in his personal capacity only. (Docket No. 45, ¶¶ 7, 11, 12.)

**Civil No. 16-1314 (GAG)**

Presently before the Court are four motions to dismiss the complaint. The ALJ moved to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Docket No. 115.) The Registrar subsequently joined the motion and raised additional immunity arguments in support of dismissal. (Docket No. 137.) The Governor joined the prior motions and raised additional arguments that this Court lacks jurisdiction to hear the complaint.[2] (Docket No. 141.) The Court then ordered Plaintiffs to show cause as to the complaint's jurisdictional basis, specifically under the Rooker-Feldman doctrine. (Docket No. 175.) Plaintiff responded *pro se*.[3] (Docket No. 186.) Then, Zengotita subsequently moved to dismiss for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. (Docket No. 191.)

Although Plaintiffs' persistence in advocating their cause is admirable, the black letter law is simply not on their side. After review of the parties' submissions and applicable law, the Court **GRANTS** Zengotita's motion to dismiss for lack of subject matter jurisdiction at Docket No. 191.

**I. Factual and Procedural Background**

In 2004, Plaintiffs Mandry-Mercado and Lugo moved into an apartment at Condominio el Señorial Plaza in Ponce, Puerto Rico. (Docket No. 45, ¶ 21.) In 2004, when Mandry-Mercado and Lugo moved into the unit, the condominium fees were $114 per month. Id. at ¶ 28. In 2005, the HOA increased the monthly fees to $142. Id. The 2005 monthly fee increase helped ignite this decade-long dispute. At some point, Mandry-Mercado and Lugo fell behind on their monthly

---

[2] Triple S and the HOA joined these motions in full without raising new arguments for dismissal. (Docket Nos. 112, 143, 145.)

[3] Plaintiffs were appointed pro bono counsel on five occasions. (Docket Nos. 58, 105, 127, 156, 162.) Each counsel was excused for various reasons. Despite these setbacks, Plaintiffs persisted, representing themselves *pro se* and raising detailed arguments to support their case. (Docket Nos. 134, 182, 186, 193-1.) Keeping this in mind, the Court construes Plaintiffs' complaint liberally. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

condominium fee payments.[4]  Id. at ¶ 51.  "The plaintiffs never paid the balance that was due before 2010 because they were not able to do so."  Id.  Plaintiffs readily admit that, even when their financial situation improved, "they stopped paying the required monthly amount" because of their dispute with the HOA and the HOA President over the fee increase.  Id.

The problems between Plaintiffs and the HOA extended beyond monthly fees.  Plaintiffs allege that Zengotita, the President of the HOA, "usurped his position as president" between 2007 through 2011.  Id. at ¶ 51.  At some time in 2007, a camera was installed outside Plaintiffs' apartment and directed at their apartment door.  Id. at ¶ 57.  Then, in December 2011, the HOA Board changed the HOA's bylaws and imposed late fees for monthly maintenance payments.  Id. at ¶ 52.

In October 2014, the HOA Board ordered that the electricity be disconnected from Plaintiffs' apartment.  Id. at ¶ 53.  About a year later, in August 2015, "the HOA proceeded to disconnect electricity and water service from the Plaintiffs' apartment."  Id. at ¶ 33.  This forced Mandry-Mercado and Lugo out of their home.  Id. at ¶ 38.

Through the duration of this decade-long dispute, Mandry-Mercado and Lugo have repeatedly sought legal recourse against the HOA defendants.[5]  Plaintiffs filed two administrative complaints, one in 2006 and one in 2007, against the HOA with the Department of Consumer Affairs ("DACO").  Id. at ¶ 58.  Both actions were dismissed.  Id. at ¶ 48.  Then, after the HOA cut off Plaintiffs' electricity in 2014, Plaintiffs filed another DACO complaint against the HOA and

---

[4] Somewhat counterintuitively, Plaintiffs claim that "Lugo has paid to the HOA over twenty thousand dollars since 2004."  Id. at ¶ 26.  If that were indeed correct, Plaintiffs would be nearly up to date with their monthly fees, which figure to be about $1,368 for the year 2004 and $1,704 annually from 2005 to present.

[5] In some prior instances, Lugo raised claims relating to the condominium dispute without co-Plaintiff Mandry-Mercado.  Though the named parties changed, their unity of interests did not.  See FED. R. CIV. P. 17(b) (capacity to sue determined by the law of the individual's domicile); Alicea Alvarez v. Valle Bello, 111 P.R. Dec. 847 (P.R. 1982) (husband and wife share fully in the representation of the conjugal community).  Thus, for the sake of consistency and clarity, the Court refers to Lugo and Mandry-Mercado simply as "Plaintiffs."

Zengotita. Id. at ¶ 53. This claim was dismissed on jurisdictional grounds in April 2015. Id. at ¶ 54. Plaintiffs elected not to appeal the DACO's jurisdictional dismissal. Id. at ¶ 55.

Instead, Plaintiffs proceeded to Puerto Rico state court. In August 2015, Plaintiffs filed a separate action in the Puerto Rico Court of the First Instance, seeking injunctive, declaratory, and mandamus relief in light of the adverse DACO determinations. Id. at ¶ 62. The Puerto Rico state court determined it lacked jurisdiction to hear the matter. Id. Plaintiffs moved for reconsideration, which was also denied. Id. Then, in 2016, Plaintiffs filed a complaint with the Puerto Rico Supreme Court against Zengotita, alleging Zengotita defrauded the Property Registrar. Id. at ¶ 37. Plaintiffs do not inform the Court of the disposition of this complaint.

Following the unsuccessful DACO complaints and state court action, Plaintiffs took their dispute to federal court. Plaintiffs filed the instant complaint before this Court on February 23, 2016 and amended their complaint on July 19, 2016. (Docket Nos. 4, 45.) Plaintiffs raise constitutional claims, through 42 U.S.C. § 1983, alleging violations of due process and equal protection. (Docket No. 45, at 28-41.) Plaintiffs request declaratory, injunctive, and mandamus relief, as well as compensatory and punitive damages, resulting from the constitutional violations. Id. at ¶¶ 108-132.

## II. Standard of Review

Federal courts are courts of limited jurisdiction. Belsito Commc'ns, Inc. v. Decker, 845 F.3d 13, 21 (1st Cir. 2016); see U.S. CONST. art. III, § 2. Federal courts are obligated to "rigorously enforce the jurisdictional limits that Congress chooses." Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 3 (1st Cir. 1995) (citation omitted). Thus, a court "confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), ordinarily ought to decide the former before broaching the latter." Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir. 2002) (citations omitted).

**Civil No. 16-1314 (GAG)**

Rule 12(b)(1) requires dismissal when the court lacks subject matter jurisdiction to hear a complaint. FED. R. CIV. P. 12(b)(1). Because subject matter jurisdiction "involves a court's power to hear a case," it cannot be forfeited or waived. United States v. Cotton, 535 U.S. 625, 630 (2002). Thus, a claim invoking federal question jurisdiction will be dismissed if it is not colorable; that is, if it is "immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous." Arbaugh v. Y&H Corp., 546 U.S. 500, 513 n.10 (2006) (citing Bell v. Hood, 327 U.S. 678, 682-83 (1946)). Once jurisdiction is challenged, "it is plaintiff's burden to establish that the court has jurisdiction." Id. Jurisdictional challenges include standing, ripeness, mootness, and sovereign immunity. See Valentín v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001).

Rule 12(b)(6), by contrast, provides that a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This requires determining whether the complaint alleges enough facts to "raise a right to relief above the speculative level." Id. at 555. The court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010); see also Soto-Torres v. Fraticelli, 654 F.3d 153, 159 (1st Cir. 2011).

5

III. **Discussion**

Plaintiffs raise federal constitutional claims arising from a longstanding condominium association dispute, which traversed through state administrative proceedings and state court before arriving in federal court. Plaintiffs lost round one in the DACO proceedings. Then, Plaintiffs lost round two in Puerto Rico state court. Now, in round three, Plaintiffs seek vindication in federal court. However, when a "losing party in state court file[s] suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment[,]" the federal district court lacks subject-matter jurisdiction to hear the case. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005). For that reason, Plaintiffs' complaint must be dismissed for lack of subject-matter jurisdiction.

A. *Rooker-Feldman* Doctrine

Under the Rooker-Feldman doctrine, lower federal courts lack jurisdiction to review state court judgments where a federal plaintiff alleges constitutional injury caused by the state court judgment. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983). The rationale for the rule derives from 28 U.S.C. § 1257, which vests the Supreme Court with appellate jurisdiction to hear appeals from decisions of a state's highest court. A negative inference follows from section 1257: lower federal courts lack appellate jurisdiction to review state court decisions. While recognizing this inference, the Rooker-Feldman doctrine is limited in scope: it applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil, 544 U.S. at 284.

In Rooker, a plaintiff sued in federal district court seeking to have an adverse state-court judgment "declared null and void." 263 U.S. at 414. In Feldman, the losing parties in a District of

**Civil No. 16-1314 (GAG)**

Columbia proceeding brought a federal-court suit against the District of Columbia court. In each case, the Supreme Court held that lower federal courts lacked jurisdiction to hear the suit. See Exxon Mobil, 544 U.S. at 283 (explaining the development of the doctrine). This is because the Supreme Court's appellate jurisdiction to review final judgments from the highest court of each state is exclusive. See id. at 292 (compiling cases); see also 28 U.S.C. § 1258 (Supreme Court's exclusive appellate jurisdiction over decisions from the Puerto Rico Supreme Court). Lower federal courts, by contrast, exercise original—not appellate—jurisdiction. See Exxon Mobil, 554 U.S. at 283.

The Rooker-Feldman doctrine applies where a federal court plaintiff seeks to "overturn an injurious state-court judgment." Exxon Mobil, 554 U.S. at 292. The doctrine is triggered only "after the state proceedings ended" and the losing party has "filed suit in federal court." Id. at 291. The First Circuit has recognized three circumstances where state proceedings have "ended." Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo, 410 F.3d 17, 24-25 (1st Cir. 2005). First, when the highest court of a state has affirmed the state-court judgment below. Id. at 24. Second, when proceedings have reached a point where "neither party seeks further action" in state court. Id. And third, when all federal issues have been finally resolved in the state proceeding, and only state law issues remain. Id. at 25. Thus, even an interlocutory decision by an intermediate appellate court can "end" state proceedings, thereby triggering the Rooker-Feldman doctrine. Id. at 29 (Rooker-Feldman applies where the Puerto Rico Court of Appeals denial of a motion to dismiss on preemption grounds, which effectively "ended" the federal issue, barring federal court review).

As relevant here, the First Circuit has confirmed Rooker-Feldman's application to constitutional claims arising from a state law property dispute. Davison v. Government of Puerto Rico—P.R. Firefighters Corps, 471 F.3d 220, 223 (1st Cir. 2006). The Davison dispute involved property owners who contested the requirements of a fire code in a shared condominium terrace.

7

Davison v. P.R. Firefighters Corps, 415 F. Supp. 2d 33, 35-36 (D.P.R. 2006). The parties first proceeded in an administrative forum, then in Puerto Rico state court, then in federal district court, and finally before the First Circuit. Davison, 471 F.3d at 221-22. In Puerto Rico state court, the Davison plaintiffs raised unsuccessful constitutional challenges to the fire code and related state administrative procedures. Id. at 222. The federal district court dismissed for lack of jurisdiction (and the First Circuit affirmed) because review of the Davison plaintiff's constitutional challenges would require the lower federal court to "declare that the state court wrongly decided Plaintiffs' claim." Id. at 222.

The Rooker-Feldman doctrine bars this Court's jurisdiction to review the prior adverse state proceedings. Plaintiffs' allege injury due to the DACO determinations and Puerto Rico state court dismissals. (Docket No. 45, ¶¶ 61-69, 86-87, 93-96.) The factual basis for the alleged constitutional violations arises from the DACO proceedings, DACO regulations, and the Puerto Rico Horizontal Property Law. Id. at ¶¶ 71-107. Plaintiffs also seek mandamus relief against the ALJ, claiming the ALJ failed to resolve pending motions before issuing an adverse judgment. Id. at ¶ 121. Clearly, Plaintiffs seek to "overturn an injurious state-court judgment." See Exxon Mobil, 554 U.S. at 292

Additionally, the administrative and state-court proceedings have "ended," rendering the adverse determinations final under Rooker-Feldman. The DACO proceedings "ended" when Plaintiffs abandoned the opportunity to appeal the DACO determination. See Federacion de Maestros, 410 F.3d at 24. After the DACO determinations, Plaintiffs had two options: seek reconsideration or file an appeal with the Puerto Rico Court of Appeal. (Docket No. 45, ¶ 55.) However, by Plaintiffs' own telling, the odds seemed "insurmountable," so "no appeal was pursued." Id. Likewise, state-court proceedings "ended" when Plaintiffs' complaint was dismissed on jurisdictional grounds and no appeal followed. Id. at ¶ 62. Rather, Plaintiffs filed this complaint in

**Civil No. 16-1314 (GAG)**

this Court, renewing their previously dismissed challenges and seeking a declaration of the unconstitutionality of the Puerto Rico Horizontal Property Law, the DACO's determinations, and the actions of the HOA parties. Id. at ¶¶ 108-130. The declaratory relief Plaintiffs seek would require this Court to find that the DACO and the Puerto Rico state court erred. That type of review—lower federal court appellate review of injurious state-court judgments—is precisely what Rooker-Feldman prohibits. See Federacion de Maestros, 410 F.3d at 29.

Plaintiffs argue that Rooker-Feldman cannot apply here because the DACO determinations and Puerto Rico state court dismissals were not resolved on the merits. (Docket No. 186, at 6.) However, Rooker-Feldman's jurisdictional bar does not distinguish between merits decisions and non-merits decisions. See Federacion de Maestros, 410 F.3d at 28-29; Davison, 471 F.3d at 223. Instead, what matters is whether the state proceedings have "ended." Federacion de Maestros, 410 F.3d at 24. A "United States District Court has no authority to review final judgments of a state court"—that power rests only with the United States Supreme Court. Feldman, 460 U.S. at 482. Accordingly, this Court lacks the power to exercise appellate review of the determinations made by the DACO and the Puerto Rico state court.

**IV. Conclusion**

For the reasons set forth above, Defendant's motions to dismiss for lack of subject-matter jurisdiction at Docket No. 191 is hereby **GRANTED**. Defendants' motions to dismiss at Docket Nos. 115, 137, and 141 are **MOOT**. Plaintiff's complaint at Docket No. 45 is **DISMISSED.**

**SO ORDERED.**

In San Juan, Puerto Rico, on this 26th day of June, 2017.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge